May it please the court. Good morning. Additionally, this case presented two claims for asylum. The first being he has been a Falun Gong practitioner in China. Due to his practice, he has been arrested, interrogated and severely beaten. And when he was released, he was asked to pay a fine. Also, he was promised not to practice Falun Gong again or engage in any other activities, which opposes the government policy. The second claim is for his family planning violations. He had a second child in violation of China's one-child family planning policy. As a result of that, he was severely punished economically. Both he and his wife were gone after by the government for forced sterilization. In this case, the IJ found the petitioner not critical and did not believe the adverse critical finding was not supported by the substantial evidence in the report. Why not? First of all, the first issue, the IJ stated that the policy says he can have two children because he lives in the countryside. But the petitioner argued that he worked for a government-owned company and the employment ID provided by the petitioner shows he worked for Changlu County. That's a government agency. And also, his wife also worked for the same government agency. And under the country report, page 174, it specifically says government employees are subject to strict one-child policy. Also, because they both work in the township, and the country report also stated that in the urban area, including the township, family planning policies are very strictly enforced. Counsel, could you point us to where in the record it establishes that the company they worked for subjected them to the one-child policy? There is no information in the record that specifically says that, but we can infer that from the information in the record, which is based on the employment ID that he submitted. And in China, the policy is only government employees that have employment IDs. But was the IJ compelled to make that inference, that these petitioners worked for a government agency? Yes, the IJ was compelled because the government employees, they are subject to very strict one-child planning policies. But what I'm asking you is, was the IJ compelled to make the inference that they were government employees, if there's nothing in the record that expressly identified them as government employees? The record clearly shows the petitioner and his wife, they were government employees. Also, the record shows government employees are subject to strict one-child policy. So I believe the IJ is compelled to make that finding. And there's no exception in the record that says that some government employees do not subject to the one-child policy. I understand that. But I didn't see in the record where they were identified as government employees. I'm sorry. The employee ID card that has the CEO of that company, there is a star in the middle of the CEO. That shows that's a government agency. Well, he's a government employee, so that's what he was subject to. Now, where is that testimony in the record that says a star in the middle of the identity card identifies the worker as a government worker? Where is that testimony in the record? There is no testimony in the record. But in China, that's like common knowledge in China. It should be in the record. I believe also he suffered tax persecution based on the family planning violations. He was asked to pay first 20,000 RMB. That's equal to about two years of his family income. Based on the record, his average income in that area is about 500 RMB per month. And his wife works in the same company. That equals to about two years total income for the family for the 20,000 RMB fines. And he was asked to pay more fines, which is 50,000 RMB, also for forced sterilization. Did I see somewhere in the record that after he came to the United States, that there was some sort of document that went to his former home and showed that he was supposed to pay a greater fine? Yes, that is correct. And that if he came back, he'd be subject to sterilization? Was that in the record? Yes, that is in the record. Under this case law, it's decided in August 2008, it's Zhao and Duan versus Attorney General. In that case, the petitioner, the way the filing of the petitioner, suffered basically almost identical treatment. They were both arrested, interrogated, and physically abused. In that case, they still could grant the asylum to the petitioner, I believe. The case was remanded to the BIA. The fact in this case is very similar to that case, Zhao versus Attorney General. The citation for that is 07-75041. In the BIA's decision, the BIA stated that because the petitioner was able to leave China in their own passport, that should undermine their claim for asylum. But that's not the case. First, under the case law of this circuit, it's Meng Wuxian versus Ashcroft. That's 390-F31129-1137-9, Circuit 2004. In that case, they still could hear that a petitioner's ability to escape her persecutor does not undermine her claim for fear of future persecution. May I ask you a question? When the husband came to the United States, was the wife still in China? The wife came with him. Both of them came together? Yes, at the same time. At the same time. The two children are still in China. Now, at the time the notice was sent that one of the spouses had to be sterilized, were they still in China? They were already in the United States. They were already in the United States. Yes. So clearly, in this case, the petitioner will face the fear of future persecution. Upon their return to China, one of them will be sterilized against their will. Also, because the mayor petitioner still practices Falun Gong in the United States, that's in the record. He will also face the future persecution of his membership as a Falun Gong practitioner. I'm done. Okay. Thank you. Thank you. Counsel, before you start, for me, I'm not speaking for anyone else, but the most troubling part of this case for me is the adverse credibility determination. So if you could just address the points that the IJ found as being not worthy of credence and why we're not compelled to accept that, that would help me greatly. Thank you, Your Honor. That's all in this case. May it please the Court. Eric Marsteller for the Attorney General. We believe the Court should deny this petition for review because the immigration judge's adverse credibility finding is supported by the record. The most significant finding was the immigration judge's finding that Mr. Yu gave inconsistent testimony regarding the fine that was levied against him by the Chinese authorities regarding his alleged violation of the two-child policy. Could you walk us through that testimony in the transcript, please? Well, he testified during his direct examination that he was fined 20,000 yuan. What page are you on? I don't have the precise page in front of me right now, but he does have – I'm sorry, it's on page 85 of the record. He says that he was fined 20,000 yuan, and when he was asked if that was the only punishment he received for having the son, the second child, he testified that, yes, the 20,000 yuan fine was the only punishment he received for having that child. Well, he says in his brief that he testified on direct, his brief to the BIA, that he paid 20,000 yuan once and then 50,000 yuan on a different occasion. Well, that's really the source of, I think, the immigration judge's credibility finding. It's kind of muddled testimony. He initially says it's 20,000 and that's that. He shows a receipt showing that he paid 20,000 to the family planning authorities, and his declaration also refers to the family planning authorities coming around and asking him for 20,000 yuan. And then on cross-examination, he changed it to 50,000. That's correct, Your Honor. On cross-examination, when he was asked about this document that he submitted, saying, well, this says you owe 50,000 yuan, which was the document that was dated, I think, December 2001, after he was already in the United States. When he was asked about that, then Mr. Yu attempted to clarify his testimony by saying, well, he was really fined 50,000 yuan, but he knew somebody, so he was able to kind of not pay it all at once and that he really owed it. But nowhere is there any evidence, aside from this 2001 letter, which came after the fine was initially paid, is there any evidence that the original fine was 50,000 yuan. That comes later. And we have great questions about the legitimacy of that claim as well. Okay. And so you're saying that he was given a chance to explain it on cross because there was a discrepancy and he didn't? Yes. Yes. So there was a discrepancy between the document and the testimony. That's correct, Your Honor. Oh, and also within his testimony after he clarified it, between his initial direct examination testimony and once he tried to explain the document, then his testimony became inconsistent as well. I forgot. Was he speaking through an interpreter or was he speaking in English? He was speaking through an interpreter. And the part of the direct examination where he discusses this is on pages 117 and 118 of the record. We believe that this is a substantial discrepancy and it goes to the heart of his claim as to whether or not he was in fact punished and to what degree he was allegedly punished for violating the family planning policy. Taking a step back, we also believe that the court really need not address the credibility issue because it was never raised in Mr. Yu's brief to this court. And we believe that he has consequently abandoned the claim. Well, the difficulty with that argument is that you addressed it in your brief, so you can't claim there's prejudice to you because you addressed the adverse credibility determination. That is true, Your Honor. But in this court where it has discussed the government's waiver of the waiver, which is, for instance, in the Tocatli decision, in those cases the government didn't argue waiver in its brief, and so the court said that that waiver couldn't apply. Here, the government made the argument in its brief and then as a backup argued on the merits. So we believe that the court... Well, he argues the basic testimony supporting his claim and at least inferentially asks us to accept it as credible. I mean, that's got to be what he's arguing. Well, I mean, there's no mention at all of the fines in his argument in his brief. Right. And so at the very least, even if the court deems it worth considering, at the very least he hasn't met his burden that the record compels the conclusion that explaining away the inconsistencies. He hasn't shown that the record compels that he was credible. You'd be happy with that? I think that would be... In lieu of a holding that he waived it? Yes, Your Honor. Where in the record can we find the after-the-fact letter that you were referencing, the 2001 one? It is on page 208 of the record. Okay. And I want to note, Your Honors, that the letter, which as Petitioner's Counsel noted, was dated after he had already come to the United States. The letter is actually addressed to the Tantau Supply and Marketing Station, which was his employer when he was in China. But at the time the letter was addressed, which is December 18, 2001, he had already been released from... He had not worked there for over 10 months. So there's some question as to the weight that that letter should be given. Are you saying that Chinese bureaucracy is so much better than ours that the letter should have gotten there before he left? Is that what you're saying? No, we're saying that it just... It's questionable as to why the letter would have been addressed to his employer when he hadn't worked there in quite some time, at the time the letter was allegedly issued. When did he leave China? He left China... He was released from his job in February 2001, and he left China in September 2001. Or at least he was given... The termination letter was issued in February 2001. He may have testified that he was not allowed to return to work after he was released from... Now, what's your response to opposing counsel's representation that there's a fair inference that his employer was a government agency? Well, he does claim that the... We believe that if the court upholds the credibility finding, the adverse credibility finding, then that would kind of end the matter. There is some evidence in the record that he was... allegedly a government ID card, and the notice of termination is allegedly from a government agency. Well, but you say allegedly, but what does the record say about whether or not he was a government employee? Well, I think in this case the immigration judge, neither the immigration judge nor the board questioned that fact, so I don't think we would rest on that in our arguments. So you're not questioning that fact now? To the extent that his testimony has some credibility, we don't question it. The immigration judge's credibility finding was not based on that fact, so we can't argue that that potential inconsistency or fact has any impact on the credibility finding. But if the court finds that the alien is not credible or agrees with the board's conclusion that the alien is not credible, then that fact also would not be deemed true because of the credibility finding. This court in Houssef and Wang has shown that it must uphold an adverse credibility finding if just one of the immigration judge's reasons for finding the credibility finding is supported by substantial evidence and goes to the heart of the claim. How did the immigration judge get to the fact that, because he lived some particular place, he could have two kids instead of one? Well, there's evidence in the State Department reports that indicate those who live in rural areas in Fujian province are subject to what's called a one-and-a-half child policy, meaning that if a first child is a daughter, if they wait a certain number of years, usually it's four years, then they can seek permission to have a second child. And that's the general policy in rural areas in Fujian province. And there's also evidence in the record that even some of the southern urban areas of Fujian province have a very loosely applied one-child policy. So, again, we believe that the inconsistencies regarding the fine is sufficient to uphold the credibility finding. If the Court has any further questions, we believe the Court should deny the petition for repeal. Thank you. Are there any further questions? Thank you. Yes. Thank you, Your Honor. The first thing is, Plano never waived the adverse credibility finding. It was a very big challenge before the Board. The thing is, in the BIA's decision, BIA never commented or took a position regarding the challenges. The decision was totally silent regarding the challenges. I don't know whether the BIA reviewed the challenge or BIA says, we agree with the idea, and specifically, he left China without a problem. Basically, that's it. It didn't say anything about the challenges before the Board. The second thing is regarding the 20,000 yuan fine and the 50,000. The 20,000 is something that already happened. It was paid. The 50,000 is for something in the future. That might be the position of the unilateral wishful thinking that the 20,000 yuan was already included in the 50,000. But the notice did not say whether the 20,000 had been deducted or not. The next thing is, the Government Council mentioned that when the petition was already laid off by the company, why the letter was still sent to his former employer. They explained to me that because the petitioner did not have a new employer, so his personnel file was still kept in his former employer's place. That's what the family planning officer was going after. The next thing is the one-and-a-half child policy. That applies to people working in the fields or farmers in the countryside, not for the petitioner's situation because he was working for the government company. And the next thing is, contrary to what the government committee just said, that people even in urban southern Fujian province, they can have a second child. But the petitioner is not from the southern province of Fujian province. He's from the northern part of Fujian province. It didn't say that. And there's one other issue that was mentioned by IJ. Because the petitioner said that the second child was born without a permit, so why the hospital issued a birth permit. I have to draw a comparison with this. The hospital, despite that it's a government hospital, it's under the jurisdiction of the Ministry of Public Health, but it's not in charge of supervising family planning policy. It's just for record-keeping purposes. In this country, like the U.S. Census Bureau, they say this person lives in the United States on April 1, 2010. But that does not mean this person is here legally. These are two separate issues. So your point is two different agencies, two different purposes, one family planning, the other for recordation of births. That's right. The hospital says this person was born here. It does not mean here this person was born with a permit. Right. Got it. Thank you. Thank you. The case just argued is submitted.
judges: Collins, Schroeder, Rawlinson